UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
CASTLERIGG MASTER INVESTMENTS :
LTD.,
:
      Plaintiff,
:
  -against-                             :    Civ. No. 07-cv-9742 (GEL)(DCF)

CHARYS HOLDING COMPANY, INC., :
                                         **DECLARATION OF**
      Defendant.             :    **MATTHEW PLISKIN**

                                       :
----------------------------------------- X

      I, Matthew Pliskin, do hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

      1.     I am a Managing Director of Plaintiff Castlerigg Master Investments, Ltd. ("Castlerigg"). I submit this declaration in support of Plaintiff's Motion for Summary Judgment. The statements set forth below are based upon my personal knowledge.

### The Note

      2.     On or about April 30, 2007, Defendant Charys Holding Company, Inc. ("Charys"), Castlerigg, and certain other investors (the "Other Investors") entered into a Securities Exchange Agreement ("SEA") whereby Castlerigg exchanged a certain number of Preferred Shares that it held in Charys for a note. A true and complete copy of the SEA, excluding the annexed exhibits, is attached hereto as Exhibit 1.

      3.     At the closing of the SEA, on or about April 30, 2007, Charys issued Castlerigg a subordinated unsecured convertible Note in the amount of $5,012,426.00 (the "Note"). A true and complete copy of the note is attached hereto as Exhibit 2.

4. The Note, in relevant part, states:

> **FOR VALUE RECEIVED**, Charys Holding Company, Inc., a Delaware corporation (the "**Company**"), hereby promises to pay to the order of CASTLERIGG MASTER INVESTMENTS LTD. or registered assigns ("**Holder**") the amount set out above as the Principal (as reduced pursuant to the terms hereof pursuant to redemption, conversion or otherwise, the "**Principal**") when due, whether upon the Maturity Date (as defined below), on any Installment Date with respect to the Installment Amount due on such Installment Date (each, as defined herein), acceleration, redemption or otherwise (in each case in accordance with the terms hereof) and to pay interest ("**Interest**") on any outstanding Principal at a rate equal to 8.75% per annum (the "**Interest Rate**"), from the date set out above as the Issuance Date (the "**Issuance Date**") until the same becomes due and payable, whether upon any Installment Date or, the Maturity Date, acceleration, conversion, redemption or otherwise (in each case in accordance with the terms hereof).

(Ex. 2 at 1.) (Emphasis in original.)

5. The Note further provided that, "[o]n each Installment Date, the Company shall pay to the Holder an amount equal to the Installment Amount due on such Installment Date." (*Id.*)

6. The Installment Date is defined under Section 27(o) of the Note as "May 15, 2007 and the first calendar day of July 2007 and each subsequent calendar month through May 1, 2008, and any other Installment Date scheduled by the Holder in connection with a Deferral Amount pursuant to Section 8(b) hereof." Attached to the Note as Exhibit II is a schedule of the Installment Dates and the corresponding Installment Amount due and payable on each respective Installment Date.

### Castlerigg's Default Rights

7. The Note provides that Castlerigg has certain rights in an Event of Default.

8. First, "[u]pon the occurrence and during the continuance of an Event of Default, the Interest Rate shall be increased to fifteen percent (15%)." (Ex. 2 § 2.)

9. Second, Charys is required to issue a warrant to Castlerigg upon the first Event of Default under Section 4(a)(v) and every 30 days thereafter during which the Event of Default continues. Specifically, Section 4(c) of the Note provides:

> Upon the first occurrence of a default under section 4(a)(v) of this Note, without regard to any cure period thereunder, and upon the expiration of each additional 30 day thereafter during which the Event of Default continues, in whole or in part (such late payment, the "Delinquent Payment Amount"), the Company shall issue a Warrant to the Holder… for such number of shares of Common Stock of the Company equal to the Delinquent Payment Amount at such time divided by the Conversion Price.

10. Section 4(c) of the Note further provides that, upon the occurrence of a second Event of Default under Section 4(a)(v), Charys must issue another warrant to Castlerigg (the "Second Warrant"). Specifically, Section 4(c) of the Note provides:

> Upon the second occurrence of an Event of Default under section 4(a)(v) of this Note, without regard to any cure period thereunder, the Company shall issue a Warrant to the Holder for such number of shares of Common Stock of the Company equal to the outstanding principal balance of the Note at such time divided by the Conversion Price.

11. Third, upon an Event of Default, Castlerigg is entitled to Late Charges. Late Charges, as referred to in Section 4(b) and defined by the Note, are payable when "[a]ny amount of Principal or other amounts due under the Transaction Documents, other than Interest, which is not paid when due shall result in a late charge being incurred and payable by the Company in an amount equal to interest on such amount at the rate of eighteen percent (18%) per annum from

the date such amount was due until the same is paid in full ("**Late Charges**")". (*Id.* § 23(b).) (Emphasis in original.)

12. Fourth, upon an Event of Default, Castlerigg has the option to redeem the Note by delivering to the Company an "Event of Default Redemption Notice." (Ex. 2 § 4(b).)

13. Upon receipt of the Event of Default Redemption Notice, Charys is required to redeem the Note at:

> a price equal to the greater of (i) the product of (x) the sum of the Conversion Amount to be redeemed together with accrued and unpaid Interest with respect to such Conversion Amount and accrued and unpaid Late Charges with respect to such Conversion Amount and Interest and (y) the Redemption Premium and (ii) the product of (A) the Conversion Rate with respect to such sum of the Conversion Amount together with accrued and unpaid Interest with respect to such Conversion Amount and accrued and unpaid Late Charges with respect to such Conversion Amount and Interest in effect at such time as [Castlerigg] delivers an Event of Default Redemption Notice and (B) the Closing Sale Price of the Common Stock on the date immediately preceding such Event of Default.

(*Id.*)

### Charys Defaults on the Note

14. Section 4(a) of the Note defines a series of events which qualify as an Event of Default. One such event is:

> [Charys'] failure to pay to [Castlerigg] any amount of Principal, Interest, Late Charges or other amounts when and as due under this Note (including, without limitation, the Company's failure to pay any redemption payments or amounts hereunder) or any other Transaction Document (as defined in the Securities Exchange Agreement) or any other agreement, document, certificate or other instrument delivered in connection with the transactions contemplated hereby and thereby to which [Castlerigg] is a party, except, in the case of a failure to pay Interest and Late Charges when and as due, in which case only if such failure continues for a period of at least five (5) Business Days

(Ex. 2 § 4(a)(v).)

15. Moreover, a default under a note issued to any investor triggers a default under the other notes. Specifically, Section 4(a)(xi) of the Note provides that an Event of Default occurs when "[a]ny Event of Default (as defined in the Other Notes) occurs with respect to any Other Notes." (*Id.* § 4(a)(xi).)

16. On September 1, 2007, Charys was obligated to make an installment payment on the Note in an amount of $435,708.04. Charys failed to make this payment.

17. Charys' failure to make the September 1, 2007 installment payment qualifies as an "Event of Default" under Section 4(a)(v) of the Note and triggered certain of Castlerigg's rights under the Note.

18. Castlerigg sent Charys, by facsimile & overnight courier, an Event of Default Redemption Notice on September 28, 2007, in accordance with Section 4(b) of the Note. The Event of Default Redemption Notice states that Castlerigg "elects to require [Charys] to redeem $4,937,244 at the Event of Default Redemption Price in accordance with Section 4(b) of the Note." A true and correct copy of the Event of Default Redemption Notice is attached hereto as Exhibit 3.

19. Charys has not made any Installment Payments since Castlerigg transmitted the Event of Default Redemption Notice.

20. Because the Event of Default was pursuant to paragraph 4(a)(v), the Event of Default Redemption Price includes a 120% premium. (Ex. 2 § 27(x).)

21. Charys has not redeemed the Note nor has it issued any of the warrants to which Castlerigg is entitled. As of the close of business on February 1, 2008, Castlerigg is entitled to six warrants of the type described above in paragraph 9, each for 193,648 shares of Charys

Common Stock and a single Second Warrant for 1,794,471 shares of Charys Common Stock. In sum, through these warrants, Charys is entitled to 2,956,359 shares of Charys Common Stock.

### Charys Admits Its Default

22.     On November 5, 2007 – three days after Castlerigg filed its Complaint – Charys filed its Form 10-KSB with the Securities and Exchange Commission (the "SEC"). A true and correct copy of relevant portions of Charys' Form 10-KSB is attached hereto as Exhibit 4.

23.     In its Form 10-KSB, Charys admitted not only its default on the Note, but also that it had previously defaulted on notes issued to the Other Investors. Charys' Form 10-KSB, in pertinent part, states as follows:

> We were late in the payment due on July 13, 2007 to one investor, have not made the August 3, 2007 payment due on the note payable to one of the investors, and have not made the payments due September 3, 2007 or October 3, 2007 to any investor. Pursuant to the terms of the notes, a default under one note is a default under all three notes, even if all the payments were timely made with respect to the other two notes.

(Ex. 4 at 22, F-30) Thus, Charys admits that it was in default on the Note issued to Castlerigg as early as July 13, 2007.

24.     Charys further admits that, due to its default, it was required to issue warrants to Castlerigg in accordance with Section 4(c) of the Note. Charys's 10-KSB states:

> In addition, and without limitation of any other rights and remedies under the foregoing notes, upon the first occurrence of a default under the Note, without regard to any cure period thereunder, and upon the expiration of each additional 30 day thereafter during which the event of default continues, in whole or in part (such late payment, the "Delinquent Payment Amount"), **[Charys] shall issue a Warrant to [Castlerigg]** for such number of shares of Common Stock of the Company equal to the Delinquent Payment Amount at such time divided by the Conversion Price. Upon the second occurrence of an Event of Default, without regard to any cure period thereunder, **[Charys] shall issue a Warrant to [Castlerigg]** for such number of shares of Common Stock of the

>   Company equal to the outstanding principal balance of the Note at such time divided by the Conversion Price.

(*Id.*) (Emphasis added.)

### Redemption Amount Due to Castlerigg

25.  As Charys admits in its Form 10-KSB, on July 13, 2007, Charys defaulted under the note it issued to one of the Other Investors and that default also qualified as an Event of Default under the Note issued to Castlerigg. (Ex. 2 § 4(a)(xi).) As such, the Interest Rate on the Note automatically increased to fifteen percent (15%) as of July 13, 2007. (*Id.* § 2.)

26.  As of the close of business on February 1, 2008, Castlerigg is entitled to an Event of Default Redemption Price equal to no less than $5,649,363, which is calculated as follows:

>   Unpaid Principal: $4,037,560
>   (+)
>   Accrued Interest: $416,656
>   (+)
>   Accrued Late Charges: $253,587
>   (=)
>   Total: $4,707,803
>   (x)
>   120% Redemption Premium
>   (=)
>   Total Amount Due as of COB 2/1/08 = **$5,649,363**

### Attorneys' Fees

27.  Moreover, in paragraph 8(k) of the SEA, Charys agreed to "defend, protect, and hold harmless [Castlerigg] … from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith … including reasonable attorneys' fees and disbursements … incurred by [Castlerigg] as a result of, or arising out of or relating to … (b) any breach of any covenant, agreement or obligation of the Company contained in the Transaction Documents …" (Ex. 1 ¶ 8(k).) The Note is included in the definition of "Transaction Documents." (*Id.* ¶ 3(b).)

28. To date, Castlerigg has incurred $44,506.25 in costs and attorneys's fees and disbursements in bringing and prosecuting this action. Castlerigg will presumably incur additional legal expenses in this matter, including, without limitation, expenses in connection with this motion and the mediation ordered by the Court.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed: January 11, 2008

_____
Matthew Pliskin