# EXHIBIT 2 – Part C

COPY

Securities Exchange Act of 1934, as amended), directly or indirectly, of 50% of the issued and outstanding Common Stock or the aggregate ordinary voting power represented by issued and outstanding Common Stock. Provided, however, notwithstanding anything herein contained or in any of the other Transaction Documents, any consolidation of a Subsidiary into another Subsidiary or Subsidiaries shall not be deemed to be a Fundamental Transaction.

(m)  "**GAAP**" means United States generally accepted accounting principles, consistently applied.

(n)  "**Installment Amount**" means with respect to any Installment Date, the lesser of (A) with respect each Installment Date, the amount set forth opposite such date on Exhibit II attached hereto (in each case, plus the sum of any accrued and unpaid Interest with respect thereto and accrued and unpaid Late Charges with respect thereto and Interest and any accrued and unpaid interest thereon), and (B) the Principal amount (plus the sum of any accrued and unpaid Interest with respect to such Principal amount and accrued and unpaid Late Charges with respect to such Principal amount and Interest any accrued and unpaid interest thereon) under this Note as of such Installment Date, as any such Installment Amount may be reduced pursuant to the terms of this Note, whether upon Conversion, redemption or otherwise. For the avoidance of doubt, any accrued and unpaid interest which may be paid pursuant to this definition shall be deducted from the total interest to be paid on any subsequent Interest Payment Date. In the event the Holder shall sell or otherwise transfer any portion of this Note, the transferee shall be allocated a pro rata portion of the each unpaid Installment Amount hereunder.

(o)  "**Installment Date**" means May 15, 2007 and the first calendar day of July 2007 and each subsequent calendar month through May 1, 2008, and any other Installment Date scheduled by the Holder in connection with a Deferral Amount pursuant to Section 8(b) hereof.

(p)  "**Issuance Date**" means the Issuance Date.

(q)  "**Liquidation Event**" means the voluntary or involuntary liquidation, dissolution or winding up of the Company or such Subsidiaries the assets of which constitute all or substantially all of the business of the Company and its Subsidiaries taken as a whole, in a single transaction or series of transactions.

(r)  "**Options**" means any rights, warrants or options to subscribe for or purchase shares of Common Stock or Convertible Securities.

(s)  "**Parent Entity**" of a Person means an entity that, directly or indirectly, controls the applicable Person and whose common stock or equivalent equity security is quoted or listed on an Eligible Market, or, if there is more than one such Person or Parent Entity, the Person or Parent Entity with the largest public market capitalization as of the date of consummation of the Fundamental Transaction.

(t)  "**Payment Month**" means each of: the period beginning on and including the Issuance Date and ending on and including May 31, 2007; and each of the monthly periods commencing on the first day of June 2007 and each subsequent month and ending on the last day of each such calendar month, so long as Principal or Interest or Late Charges are outstanding under the Note.

(u)  "**Permitted Liens**" means subject to the Securities Exchange Agreement (i) any Lien for taxes not yet due or delinquent or being contested in good faith by appropriate proceedings for which adequate reserves have been established in accordance with GAAP, (ii) any statutory Lien arising in the ordinary course of business by operation of law with respect to a liability that is not yet due or delinquent, (iii) any Lien created by operation of law, such as materialmen's liens, mechanics' liens and other similar liens, arising in the ordinary course of business with respect to a liability that is not yet due or delinquent or that are being contested in good faith by appropriate proceedings, and (iv) any Lien described in the Company's SEC documents as of the date hereof.

(v)  "**Person**" means an individual, a limited liability company, a partnership, a joint venture, a corporation, a trust, an unincorporated organization, any other entity and a government or any department or agency thereof.

(w)     "**Principal Market**" means The National Association of Securities Dealers, Inc. Over-The-Counter Bulletin Board.

(x)     "**Redemption Premium**" means (i) in the case of the Events of Default described in Section 4(a)(i) - (vi) and (ix) - (xii), 120% or (ii) in the case of the Events of Default described in Section 4(a)(vii) - (viii), 100%.

(y)     "**Registration Rights Agreement**" means that certain registration rights agreement dated as of the Issuance Date by and among the Company and the initial holders of the Notes relating to, among other things, the registration of the resale of the Common Stock issuable upon Conversion of the Notes and exercise of the Warrants.

(z)     "**Required Holders**" means the holders of Notes representing at least a majority of the aggregate principal amount of the Notes then outstanding.

(aa)    "**SEC**" means the United States Securities and Exchange Commission.

(bb)    "**Securities Exchange Agreement**" means that certain Securities Exchange Agreement dated as of the Issuance Date by and among the Company and the initial holders of the Notes pursuant to which the Company issued the Notes.

(cc)    "**Successor Entity**" means the Person, which may be the Company, formed by, resulting from or surviving any Fundamental Transaction or the Person with which such Fundamental Transaction shall have been made, provided that if such Person is not a publicly traded entity whose common stock or equivalent equity security is quoted or listed for trading on an Eligible Market, Successor Entity shall mean such Person's Parent Entity.

(dd)    "**Trading Day**" means any day on which the Common Stock is traded on the Principal Market, or, if the Principal Market is not the principal trading market for the Common Stock, then on the principal securities exchange or securities market on which the Common Stock is then traded; provided that "Trading Day" shall not include any day on which the Common Stock is scheduled to trade on such exchange or market for less than 4.5 hours or any day that the Common Stock is suspended from trading during the final hour of trading on such exchange or market (or if such exchange or market does not designate in advance the closing time of trading on such exchange or market, then during the hour ending at 5:00:00 p.m., New York Time).

(28)    **DISCLOSURE**. Upon receipt or delivery by the Company of any notice in accordance with the terms of this Note, unless the Company has in good faith determined that the matters relating to such notice do not constitute material, nonpublic information relating to the Company or its Subsidiaries, the Company shall within one (1) Business Day after any such receipt or delivery publicly disclose such material, nonpublic information on a Current Report on Form 8-K or otherwise. In the event that the Company believes that a notice contains material, nonpublic information relating to the Company or its Subsidiaries, the Company so shall indicate to such Holder contemporaneously with delivery of such notice, and in the absence of any such indication, the Holder shall be allowed to presume that all matters relating to such notice do not constitute material, nonpublic information relating to the Company or its Subsidiaries.

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed as of the Issuance Date set out above.

CHARYS HOLDING COMPANY, INC.

By _____
Bill V. Ray, Jr. Chief Executive Officer

- 18 -

**EXHIBIT I**

**CHARYS HOLDING COMPANY, INC.**
**CONVERSION NOTICE**



Reference is made to the Subordinated Unsecured Convertible Note (the "Note") issued to the undersigned by Charys Holding Company, Inc. (the "Company"). In accordance with and pursuant to the Note, the undersigned hereby elects to convert the Conversion Amount (as defined in the Note) of the Note indicated below into shares of Common Stock par value $0.001 per share (the "Common Stock") of the Company, as of the date specified below.

Date of Conversion: _____

Aggregate Conversion Amount to be converted: _____

Please confirm the following information:

Conversion Price: _____

Number of shares of Common Stock to be issued: _____

Please issue the Common Stock into which the Note is being converted in the following name and to the following address:

Issue to: _____
_____
_____

Facsimile Number: _____

Authorization: _____

By: _____

Title: _____

Dated: _____

Account Number: _____
(if electronic book entry transfer)

Transaction Code Number: _____
(if electronic book entry transfer)

Installment Amounts to be reduced and amount of reduction: _____

NYK 1100154-2.075266.0020

## ACKNOWLEDGMENT

The Company hereby acknowledges this Conversion Notice and hereby directs _____ to issue the above indicated number of shares of Common Stock in accordance with the Conversion Notice.

CHARYS HOLDING COMPANY, INC.

*[COPY stamp]*

By: _____
    Name:
    Title:



| Exhibit II (Castlerigg) | |
|---|---|
| Date | Payment ($) |
| 5/15/2007 | 300,000 |
| 7/1/2007 | 268,598.33 |
| 8/1/2007 | 508,487.04 |
| 9/1/2007 | 435,708.04 |
| 10/1/2007 | 432,745.68 |
| 11/1/2007 | 429,783.31 |
| 12/1/2007 | 490,346.44 |
| 1/1/2008 | 486,920.87 |
| 2/1/2008 | 483,495.29 |
| 3/1/2008 | 480,069.72 |
| 4/1/2008 | 476,644.15 |
| 5/01/2008 | 473,218.57 |