under the other notes. (*Id.* ¶¶ 23, 24, Ex. 4 at 22, F-30.) Charys's Form 10-KSB, in pertinent part, states as follows:

> We were late in the payment due on July 13, 2007 to one investor, have not made the August 3, 2007 payment due on the note payable to one of the investors, and have not made the payments due September 3, 2007 or October 3, 2007 to any investor. Pursuant to the terms of the notes, a default under one note is a default under all three notes, even if all the payments were timely made with respect to the other two notes.

(Pliskin Decl. Ex. 4 at 22, F-30.) Thus, Charys admits that the first Event of Default under the Note was on July 13, 2007.[3]

Charys further admits in its Form 10-KSB that, due to its default under the Notes, it is required to issue warrants to Castlerigg in accordance with section 4(c) of the Note. Charys's 10-KSB states:

> In addition, and without limitation of any other rights and remedies under the foregoing notes, upon the first occurrence of a default under the Note, without regard to any cure period thereunder, and upon the expiration of each additional 30 day thereafter during which the event of default continues, in whole or in part (such late payment, the "Delinquent Payment Amount"), **[Charys] shall issue a Warrant to [Castlerigg]** for such number of shares of Common Stock of the Company equal to the Delinquent Payment Amount at such time divided by the Conversion Price. Upon the second occurrence of an Event of Default, without regard to any cure period thereunder, **[Charys] shall issue a Warrant to [Castlerigg]** for such number of shares of Common Stock of the Company equal to the outstanding principal balance of the Note at such time divided by the Conversion Price.

(*Id.*) (Emphasis added.) Charys has not issued any of these warrants. (Pliskin Decl. ¶ 21.)

---

[3] As Charys's Form 10-KSB was filed three days after Castlerigg filed its Complaint, Castlerigg was not aware that the first Event of Default actually occurred before Charys stopped making Installment Payments to Castlerigg. It is therefore appropriate to deem Castlerigg's Complaint conformed to the proof subsequently discovered. *See Bobrow Palumbro Sales, Inc v. Broan-Nutrone, LLC*, 04 cv 5334 (DRH)(ETB), 2007 U.S. Dist. LEXIS 250, at *16 (S.D.N.Y. Jan. 4, 2007); *Agosto v. Correctional Officers Benevolent Assoc.*, 107 F. Supp. 2d 294, 310 n.12 (S.D.N.Y. 2000).

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the evidence presented "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *cert. denied*, 484 U.S. 1066 (1988).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the non-movant must provide specific facts demonstrating a material factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1985). "Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Summary judgment may also be granted before discovery has occurred. *Conn. Nat'l Bank v. Trans World Airlines*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991) "An opposing party's mere hopes that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment motion]." *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). As discussed below, the documentary evidence submitted by Castlerigg makes clear that Castlerigg is entitled to summary judgment against Charys immediately.

## II.   CASTLERIGG IS ENTITLED TO SUMMARY JUDGMENT AWARDING IT ALL OF ITS CONTRACTUAL REMEDIES.

Castlerigg is entitled to summary judgment because Charys is admittedly in breach of its contractual obligations. Under New York Law,[4] a party is entitled to relief for breach of contract when it shows: (1) the existence of agreement between the parties, (2) due performance of the party alleging the breach, (3) breach by the other party and (4) damages. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

Summary judgment is particularly appropriate given the unambiguous terms of the contracts at issue and Charys's admission in its Form 10-KSB that it is in default. New York Courts have held that the "sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." *R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 32 (2002) (internal citations omitted). "[I]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument." *Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 572-73 (1986) (internal citations omitted). The parties to the SEA and the Note set down their agreement in a clear and complete set of documents and these writings should "as a rule be enforced according to [their] terms." *Reiss v. Fin. Performance Corp.*, 97 N.Y. 195, 198 (2001).

As part of the Note, Charys promised to make a series of Installment Payments so that the Note would be paid off in May 2008. (*Id.* ¶ 6; Ex. 2 at Ex. II.) Any failure to pay an Installment Payment qualifies as an "Event of Default." (*Id.* ¶ 14; Ex. 2 § 4(a)(v).) Charys failed to make

---

[4] Section 2(g) of the Note states that "[t]his Note shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Note shall be governed by, the internal laws of the State of New York without giving effect to any choice of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdictions other than the State of New York." (Pliskin Decl. Ex. 2, § 2(g).)

the Installment Payment that was due and payable on September 1, 2007. (Pliskin Decl. ¶ 16.) As such, Charys defaulted on the Note. (*Id.* ¶ 17.) Charys then admitted to defaulting on the Note – both by failing to make Installment Payments to Castlerigg and defaulting under notes held by the Other Investors – in its SEC filings.[5] (*Id.* ¶ 23, Ex. 4 at 22, F-30.) Given these admissions, there can be no genuine issue of material fact that Charys is in breach of contract.

    A.    Castlerigg is Entitled to the Full Event
           of Default Redemption Price on the Note.

Charys's default entitled Castlerigg to exercise its right to redeem the Note in full (less any prior payments) at the Event of Default Redemption Price. (Pliskin Decl. ¶ 12, Ex. 2 § 4(b).) As a result, Castlerigg transmitted an Event of Default Redemption Notice on September 28, 2007 in accordance with the requirements of Section 4(b) of the Note. (*Id.* ¶ 18, Ex. 3.)

In calculating the Event of Default Redemption Price, the Note provides for a "Redemption Premium" to be added to the final amount of principal, accrued interest, and accrued late charges to arrive at a final Event of Default Redemption Price. (Pliskin Decl. Ex. 2, § 4(b).) Section 27(x) of the Note provides that "in the case of the Events of Default described in Section 4(a)(i)-(vi) and (ix)-(xii), 120%. . ."

As discussed above, Charys is in default under Sections 4(a)(v) and 4(a)(xi) of the Note. Accordingly, the Redemption Premium under the Note is 120%. The final Event of Default Redemption Price, including the outstanding principal of $4,037,560, accrued default interest of

---

[5] Courts are permitted to take judicial notice of filings public companies are required by law to file with the SEC. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Faulkner v. Verizon Commc'ns*, 189 F. Supp. 2d. 161, 168 (S.D.N.Y. 2002).

$380,627,[6] accrued late charges of $96,340[7] and the Redemption Premium will be equal to no less than $5,417,432 as of the close of business on February 1, 2008. (*Id.* ¶ 26.)

B.    <u>Castlerigg is Entitled to Warrants.</u>

Charys's default entitled Castlerigg not only to redeem the Note in full, but it also entitled Castlerigg to receive warrants convertible into Charys common stock. (Pliskin Decl. Ex. § 4(c).) Specific performance may be ordered by a court where there is a "(1) valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Mirada Prods. Co., Inc. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993). *See also Travellers Inern. AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1104-05 (S.D.N.Y. 1989).

As discussed above, Section 4(c) of the Note requires Charys to issue a warrant to Castlerigg upon the occurrence of an Event of Default under Section 4(a)(v) and Castlerigg is entitled to receive additional warrants at the end of every 30 day period that the default continues. (Pliskin Decl. Ex. 2, § 4(c).) The first Event of Default under Section 4(a)(v)

---

[6] The Note provides that, should an Event of Default occur, the interest rate increases from 8.75% to 15%. (Pliskin Decl. ¶ 8, Ex. 2 § 2.) Castlerigg is thus entitled to default interest of 15% starting from July 13, 2007 the first Event of Default under any provision of the Note. (*Id.* ¶ 25, Ex. 2 at §§ 2, 4(a)(xi), Ex. 4 at 22, F-30.) Therefore, the total amount of default interest due, as of the close of business February 1, 2008, is $380,627. (Pliskin Decl. ¶ 26.)

[7] The Note provides that:

> [a]ny amount of principal or other amounts due under the Transaction Documents, other than Interest, which is not paid when due shall result in a late charge being incurred and payable by the Company in an amount equal to interest on such amount at the rate of eighteen percent (18%) per annum from the date such amount was due until the same is paid in full ("Late Charge").

(Pliskin Decl. ¶ 11, Ex. 2 § 23(b).) Charys first failed to pay Castlerigg on September 1, 2007 and has not made an Installment Payment since. (*Id.* ¶¶ 16, 19.) As a result, Castlerigg will be entitled to $96,340 in Late Charges as of the close of business February 1, 2008. (*Id.* ¶ 26.)

occurred on September 1, 2007. (*Id.* Ex. 4 at 22, F-30.) As such, Castlerigg was entitled to a warrant on September 1, 2007 and additional warrants for each 30 day period thereafter. (*Id.* ¶ 9, Ex. 2 § 4(c).)

In addition, Charys's failure to make an Installment Payment on October 1, 2007 qualified as a second occurrence of an Event of Default pursuant to section 4(a)(v) of the Note. (*Id.* ¶¶ 10, 19, Ex. 3 at 22, F-30; Ex. 2 § 4(c).) As such, Castlerigg was entitled to an additional warrant under section 4(c) of the Note. (*Id.*)

Finally, Castlerigg has no adequate remedy at law. Under Section 18 of the Note, Charys acknowledged "that a breach by it of its obligations hereunder will cause irrevocable harm to [Castlerigg] and that the remedy at law for any such breach be inadequate." (Pliskin Decl. Ex. 2, § 18.) Courts have found these types of contractual provisions to be highly persuasive when analyzing whether a party has suffered irreparable harm. *See, e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (commenting that contractual provision stipulating that a breach will cause irreparable harm "might arguably be viewed as an admission" in upholding a permanent injunction of an employment contract); *Alpha Capital Aktiengesllschaft v. Advanced Viral Research Corp.*, 02cv10237 (GBD), 2003 U.S. Dist. LEXIS 2077, at *15-16 (S.D.N.Y. Feb. 11, 2003) (noting that contractual stipulation that a party would be irreparably harmed if it was not issue warrants after an event of default is given great weight by the Second Circuit); *Castle Creek Tech. Pts. v. Cellpoint Inc.*, No. 02 Civ. 6662 (GEL), 2002 U.S. Dist. LEXIS 23760, at *13 n.5 (S.D.N.Y. Dec. 9, 2002) (finding that contractual provision agreeing to irreparable harm in the event of a breach by one of the parties is significant evidence of the existence of irreparable harm).

Castlerigg has met all of the requirements for obtaining specific performance of the Note. Accordingly, Castlerigg respectfully requests the Court to require Charys to specifically perform its obligation to issue the aforementioned warrants to Castlerigg. As of the close of business on February 1, 2008, Castlerigg is entitled to six warrants for the first and continuing default under Section 4(a)(v) of the Note, each for 193,648 shares of Charys Common Stock and a single warrant for the second Event of Default pursuant to Section 4(a)(v) of the Note for 1,794,471 shares of Charys Common Stock. In sum, through these warrants, Charys is entitled to 2,956,359 shares of Charys Common Stock. (Pliskin Decl. ¶ 21.)

C.  Castlerigg is Entitled to Attorney's Fees

Finally, Charys's default entitles Castlerigg to attorneys' fees. In paragraph 8(k) of the SEA, Charys agreed to "defend, protect, and hold harmless [Castlerigg] … from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith … including reasonable attorneys' fees and disbursements … incurred by [Castlerigg] as a result of, or arising out of or relating to … (b) any breach of any covenant, agreement or obligation of the Company contained in the Transaction Documents …" (Pliskin Decl. Ex. 1, ¶ 8(k).) The Note is included in the definition of "Transaction Documents." (*Id.* ¶ 3(b).) To date, Castlerigg has incurred $44,506.25 in attorneys's fees, which does not reflect attorneys's fees in connection with the reply brief in support of this motion, the mediation ordered by the Court and other legal fees and expenses incurred prior to judgment being entered.

## CONCLUSION

For the foregoing reasons, Plaintiff Castlerigg is entitled to summary judgment on all of its claims, and a judgment as follows:

| Contractual Remedy | Amount |
|---|---|
| Outstanding Principal | $4,037,560 |
| Accrued Interest, as of February 1, 2008 | $416,656 |
| Accrued Late Charges, as of February 1, 2008 | $253,587 |
| Total Event of Default Redemption Price including 120% Redemption Premium as of February 1, 2008 | $5,649,363 |
| Attorneys's Fees | $44,506.25 |
| Warrants Due and Owing | 7 total warrants for 2,956,359 shares of Charys Common Stock |

The amounts listed in the above chart have been calculated as of February 1, 2008 – the date on which this motion will be fully briefed – but are subject to change. These amounts will likely have to be adjusted to reflect the amounts due and owing on the date that judgment is actually entered by the Court. Castlerigg will provide updated figures at the Court's request.

Dated: New York, New York.
January 11, 2008

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: _____
Andrew B. Kratenstein (AK-3910)
Michael R. Huttenlocher (MH-1710)
340 Madison Avenue
New York, New York  10173-1922
(212) 547-5400

*Attorneys for Plaintiff*
*Castlerigg Master Investments Ltd.*