UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

CASTLERIGG MASTER INVESTMENTS LTD.,  :
                                                                            :
                                                                            :
                                  Plaintiff,                      :          Civil Action No.
                                                                            :          07-CV-09742 (GEL)(DCF)
                         v.                                         :
                                                                            :
CHARYS HOLDING COMPANY, INC.,              :
                                                                            :
                                  Defendant.                  :
                                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

## CHARYS HOLDING COMPANY, INC.'S RESPONSES TO PLAINTIFF'S RULE 56.1 STATEMENT AND COUNTERSTATEMENT OF THE FACTS

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, defendant CHARYS HOLDING COMPANY, INC. (hereinafter "CHARYS"), by its attorneys, Condon & Forsyth LLP, submits the following counterstatement of material facts to which it contends there exist genuine issues to be tried.

## RESPONSES TO PLAINTIFF'S RULE 56.1 STATEMENT

*1.        On or about April 30, 2007, Defendant Charys Holding Company, Inc. ("Charys"), Castlerigg, and certain other investors (the "Other Investors") entered into a Securities Exchange Agreement ("SEA") whereby Castlerigg exchanged a certain number of Preferred Shares that it held in Charys for a note. (Declaration of Matthew Pliskin dated January 11, 2008 ("Pliskin Decl.") ¶ 1; Ex. 1.)*

**Response**:

Admits.

2.      On or about April 30, 2007, Charys issued Castlerigg a subordinated unsecured convertible note in the amount of $5,012,426.00 (the "note"). (Pliskin Decl. ¶ 2; Ex. 2.)

**Response**:

Admits.

3.      The Note, in relevant part, states:

> **FOR VALUE RECEIVED,** Charys Holding Company, Inc. a Delaware corporation (the" **Company"**), hereby promises to pay to the order of CASTLERIGG MASTER INVESTMENT LTD. or registered assigns (**"Holder"**) the amount set out above as the Principal (as reduced pursuant to the terms hereof pursuant to redemption, conversion or otherwise, the **"Principal"**) when due, whether upon the Maturity Date (as defined below), on any Installment Date with respect to the Installment Amount due on such Installment Date (each, as defined herein), acceleration, redemption or otherwise (in each case in accordance with the terms hereof) and top pay interest (**"Interest"**) on any outstanding Principal at a rate equal to 8.75% annum (the "**Interest Rate"**) from the late sell out above as the Issuance Date (the "**Issuance Date"**) until the same becomes due and payable, whether upon any Installment Date or, the Maturity Date, acceleration, conversion, redemption or otherwise (in each case in accordance with the terms hereof).

(Id. Ex. 2 at 1.) (Emphasis in original).

**Response:**

Admits.

4.      The Note further provided that, "[o]n each Installment Date, the Company shall pay to the Holder an amount equal to the Installment Amount due on such Installment Date." (Id.)

**Response**:

Admits.

5.      The Installment Date is defined under Section 27(o) of the Note as "May 15, 2007 and the first calendar day of July 2007 and each subsequent calendar month through May 1, 2008, and any other Installment Date scheduled by the Holder in connection with a Deferral Amount pursuant to Section 8(b) hereof." (Id. Ex. 2 § 27 (o), Ex. 2 at Ex. II.)

**Response**:

Admits

6.      The Note provides that Castlerigg has certain rights in an Event of Default. First, [u]pon the occurrence and during the continuance of an Event of Default, the Interest Rate shall be increased to fifteen percent (15%)." (Id. Ex. 2 § 2.)

**Response**:

Admits.

7.      Second, Charys is required to issue a warrant to Castlerigg upon the First Event of Default under Section 4(a)(v) and every 30 days thereafter during which the Event of Default continues.  (Pliskin Decl. ¶ 9.)  Specifically, Section 4(c) of the Note provides:

> Upon the first occurrence of a default under section 4(a)(v) of this Note, without regard to any cure period thereunder, and upon the expiration of each additional 30 day thereafter during which the Event of Default continues, in whole or in part (such late payment, the "Delinquent Payment Amount"), the Company shall issue a Warrant to the Holder . . . for such number of shares of Common Stock of the Company equal to the Delinquent Payment Amount at such time divided by the Conversion Price.

(Pliskin Decl. Ex. 2 § 4(c).)

**Response**:

    Admits.

8.      Section 4(c) of the Note further provides that, upon the occurrence of a second Event of Default, Charys must issue another warrant to Castlerigg (the "Second Warrant"). (Pliskin Decl. ¶ 10.) Specifically, Section 4(c) of the Note provides:

> Upon the second occurrence of an Event of Default under section 4(a)(v) of this Note, without regard to any cure period thereunder, the Company shall issue a Warrant to the Holder for such number of shares of Common Stock of the Company equal to the outstanding principal balance of the Note at such time divided by the Conversion Price.

(Pliskin Decl. Ex. 2, § 4(c).)

**Response**:

    Admits.

9.      Third, upon an Event of Default Castlerigg is entitled to Late Charges. Late Charges, as referred to in Section 4(b) and defined by the Note, are payable when "[a]ny amount of Principal or other amounts due under the Transaction Documents, other than Interest, which is not paid when due shall result in a late charge being incurred and payable by the Company in an amount equal to interest on such amount at the rate of eighteen percent (18%) per annum from the date such amount was due until the same is paid in full ("**Late Charges**"). (Id. Ex. 2 § 23(b).) (Emphasis in original.)

**Response**:

    Admits.

10.    Fourth, due to this Event of Default, Castlerigg had the option to redeem the Note by delivering to the Company an "Event of Default Redemption Notice." (Pliskin Decl. ¶ 12.)

**Response**:

Admits.

11.    Upon receipt of the Event of Default Redemption Notice, Charys is required to redeem the Note at:

> a price equal to the greater of (i) the product of (x) the sum of the Conversion Amount to be redeemed together with accrued and unpaid Interest with respect to such Conversion Amount and accrued and unpaid Late Charges with respect to such Conversion Amount and Interest and (y) the Redemption Premium and (ii) the product of (A) the Conversion Rate with respect to such sum of the Conversion Amount together with accrued and unpaid Interest with respect to such Conversion Amount and accrued and unpaid Late Charges with respect to such Conversion Amount and Interest in effect at which time as Castlerigg delivers an Event of Default Redemption Notice and (B) the Closing Sale Price of the Common Stock on the date immediately preceding such Event of Default.

(Pliskin Decl. Ex. 2 § 4(b).)

**Response**:

Admits.

12.    Section 4(a) of the Note defines a series of events which qualify as an Event of Default.  One such event is:

> [Charys'] failure to pay to [Castlerigg] any amount of Principal, Interest Late Charges, or other amounts when and as due under this Note (including, without limitation, the Company's failure to pay any redemption payments or amounts hereunder) or any other Transaction Documents (as defined in the Securities Exchange Agreement) or any other agreement, document, certificate or other instrument delivered in connection with the transactions contemplated hereby and thereby to which [Castlerigg] is a party, except, in the case of a failure to pay Interest and Late Charges when

*and as due, in which case only if such failure continues for a period of at least five (5) Business Days.*

*(Id. Ex. 2 § 4(a)(v).)*

**Response**:

Admits.


13.    *Moreover, a default under a note issued to any investor triggers a default under the other notes. Specifically, Section 4(a)(xi) of the Note provides that an Event of Default occurs when "[a]ny Event of Default (as defined in the Other Notes) occurs with respect to any Other Notes." (Id. Ex. 2 § 4(a)(xi).)*

**Response**:

CHARYS has no objection to the second sentence. The conclusion in the first sentence is vague as to "any investor" and may not necessarily be drawn from the second sentence.


14.    *On September 1, 2007, Charys was obligated to make an installment payment on the Note in an amount of $435,708.04 (Pliskin Decl. ¶ 16.) Charys failed to make this payment (Id.)*

**Response**:

Admits.


15.    *Charys' failure to make the September 1, 2007 installment payment qualifies as an "Event of Default" under Section 4(a)(v) of the Note and triggered certain of Castlerigg's rights under the Note. (Id. ¶ 17.)*

**Response**:

Admits.

16.    *Castlerigg sent Charys, by facsimile & overnight courier, an Event of Default Redemption Notice on September 28, 2007, in accordance with Section 4(b) of the Note. (Pliskin Decl. Ex. 3.)*

**Response**:

CHARYS denies that the Event of Default Redemption Notice was issued in accordance with Section 4(b) of the Note as it was not sent "[p]romptly after the occurrence of the alleged Event of Default" and the "promptness" of CASTLERIGG's issuance of the September 28, 2007 Event of Default Redemption Notice is a material issue of fact.

17.    *The Event of Default Redemption Notice states that Castlerigg "elects to require [Charys] to redeem $4,937,244 at the Event of Default Redemption Prince [sic] in accordance with Section 4(b) of the Note." (Id. Ex. 3).*

**Response**:

Admits.

18.    *Charys has not made an Installment payment since Castlerigg transmitted the Event of Default Redemption Notice. (Pliskin Decl. ¶19.)*

**Response**:

Admits.

19.    *Because the Event of Default was pursuant to Section 4(a)(v), the Event of Default Redemption Price includes a 120% premium.  (Pliskin Decl. Ex. 2 § 27(x).)*

**Response**:

Admits.


20.    *Late charges, as defined by the Note, are payable when "[a]ny amount of Principal or other amounts due under the Transaction Documents, other than Interest, which is not paid when due shall result in a late charge being incurred and payable by the Company in an amount equal to interest on such amount at the rate of eighteen percent (18%) per annum from the date such amount was due until the same is paid in full ("**Late Charges**").  (Id. Ex. 2 § 23(b).) (Emphasis in original.)*

**Response**:

Admits.


21.    *Charys has not redeemed the Note nor has it issued any of the warrants to which Castlerigg was entitled.  (Pliskin Decl. ¶ 21.)   As of the close of business on February 1, 2008, Castlerigg is entitled to six warrants of the type described above in paragraph 9, each for 193,648 shares of Charys Common Stock and a single Second Warrant for 1,794,471 shares of Charys Common Stock.  In sum, Charys [sic] is entitled to 2,956,359 warrant shares of Charys Common Stock.*

**Response**:

CHARYS has no objection to the first sentence.   As for the second sentence, CHARYS denies that plaintiff has correctly calculated its damages, and more specifically, the

amount of shares of CHARYS Common Stock for each warrant. (*See Pliskin Decl. Ex. 2 §
4(c).*)

22.     On November 5, 2007 – three days after Castlerigg filed its Complaint –
Charys filed its Form 10-KSB ("Form 10-KSB") with the Securities and Exchange
Commission (the "SEC").  (Id. ¶ 22.)

**Response**:

> Admits.

23.     In its Form 10-KSB, Charys admitted not only its default on the Note, but
also that it previously defaulted on notes issued to Other Investors.  Charys's Form 10-
KSB states in pertinent part as follows:

> We were late in the payment due on July 13, 2007 to one investor, have not
> made the August 3, 2007 payment due on the note payable to one of the
> investors, and have not made the payments due September 3, 2007 or
> October 3, 2007 to any investor.  Pursuant to the terms of the notes, a
> default under one note is a default under all three notes, even if all the
> payments were timely made with respect to the other two notes.

(Pliskin Decl. Ex. 4 at 22, F-30.)

**Response**:

> Admits.

24.     Charys further admits that, due to its default, it was required to issue
Warrants to Castlerigg in accordance with Section 4(c) of the Note.  Charys states that:

> In addition, and without limitation of any other rights and remedies under
> the foregoing notes, upon the first occurrence of a default under the Note,
> without regard to any cure period thereunder, and upon the expiration of
> each additional 30 day thereafter during which the event of default
> continues, in whole or in party [sic] (such last payment, the "Delinquent

*Payment Amount"), [Charys] shall issue a Warrant to [Castlerigg] for such number of shares of Common Stock of the Company equal to the outstanding principal balance of the Note at such time divided by the Conversion Price.*

**Response**:

Admits.

25.    *As Charys admits in its Form 10-KSB, on July 13, 2007, Charys defaulted under the note it issued to one of the Other Investors, and that default also qualified as an Event of Default under the Note issued to Castlerigg. (Pliskin Decl. Ex. 2 § 4(a)(xi).) As such, the Interest Rate on the Note automatically increased to fifteen percent (15%) as of July 13, 2007. (Id. Ex. 2 § 2).*

**Response**:

Admits.

26.    *As of the close of business on February 1, 2008, Castlerigg is entitled to an Event of Default Redemption Price equal to no less than $5,649,363. (Pliskin Decl. ¶ 26.)*

**Response**:

CHARYS is not in a position to either admit or deny as plaintiff has not provided documentation or calculations to support this allegation.

27.    *As of the close of business on February 1, 2008, Castlerigg is entitled to six warrants for the first and continuing default under Section 4(a)(v) of the Note, each for 193,648 shares of Charys Common Stock and a single warrant for the second Event of Default pursuant to Section 4(a)(v) of the Note for 1,794,471 shares of Charys Common*

*Stock. In sum, through these warrants, Charys is entitled to 2,956,359 shares of Charys Common Stock (Pliskin Decl. ¶ 21.)*

**Response**:

CHARYS has no objection to the first and second sentences.  As for the third sentence, CHARYS denies that plaintiff has correctly calculated its damages, and more specifically, the amount of shares of CHARYS Common Stock for each warrant.  (*See Pliskin Decl. Ex. 2 § 4(c).*)

28.    *Moreover, in paragraph 8(k) of the SEA, Charys agreed to "defend, protect, and hold harmless [Castlerigg] . . . from and against any and all actions, causes of action, suits, claims, losses, costs, penalties, fees, liabilities and damages, and expenses in connection therewith . . . including reasonable attorneys' fees and disbursements . . . incurred by [Castlerigg] as a result of, or arising out of or relating to  . . . (b) any breach of any covenant, agreement, or obligation of the Company contained in the Transaction Documents . . . " (Pliskin Decl. Ex. 1 ¶ 8(k).)  The Note is included in the definition of "Transaction Documents."  (Id. Ex. 1 ¶ 3(b).)*

**Response**:

Admits.

29.    *To date, Castlerigg has incurred $44,506.25 in costs and attorneys' fees and disbursements in bringing and prosecuting this action.  Castlerigg will incur additional legal expenses in this matter, including without limitation, expenses in connection with this motion and mediation ordered by the Court. (Pliskin Decl. ¶ 28.)*

**Response**:

CHARYS is not in a position to admit or deny as plaintiff has not presented documentation to support such allegation.

**CHARYS' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT TO BE TRIED**

1.    CASTLERIGG's September 28, 2007 Event of Default Redemption Notice was not issued in accordance with Section 4(b) of the Note as it was not sent "[p]romptly after the occurrence of the alleged Event of Default." (*See Ex. 2 § 4(b) annexed to Pliskin Decl .)*

2.    CASTLERIGG has failed to accurately calculate the Second Warrant, which it claims it is owed.

3.    The outstanding principal balance on the Note is $3,935,340.60 because it is undisputed that the original principal was $5,012,426.00 (*See Pliskin Decl. ¶ 3; see also Ex.2 annexed to Pliskin Decl.)* and where it also undisputed that CHARYS made payments to CASTLERIGG as agreed on May 15, 2007 in the amount of $300,000, on July 1, 2007 in the amount of $268,598.33 and on August 1, 2007 in the amount of $508, 487.04. (*See Exhibit 2, II annexed to Pliskin Decl)..*

Dated:   New York, New York
         January 25, 2008

                                    CONDON & FORSYTH LLP

                                    By:_____
                                        Stephen J. Fearon - SF 8740
                                        Bartholomew J. Banino – BB 4164
                                        Partners of the Firm
                                        7 Times Square
                                        New York, New York  10036
                                        (212) 490-9100

                                        Attorneys for Defendant
                                        CHARYS HOLDING COMPANY, INC.

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK    )
                           ) ss:
COUNTY OF NEW YORK  )

      Jennifer B. Jacobson, being duly sworn, deposes and says that deponent is not a party to

the action, is over 18 years of age and resides in Brooklyn, New York.  That on the 25th day of

January   2008  deponent   served   the   within   **RULE  56.1  STATEMENT  AND**

**COUNTERSTATEMENT OF THE FACTS** upon:

Andrew B. Kratenstein, Esq.
Michael R. Huttenlocher, Esq.
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

      At the addresses designated by said attorneys for that purpose by depositing same

enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive

care and custody of the United States Post Office Department within the State of New York.

_____
Jennifer B. Jacobson

Sworn to before me this
25ᵗʰ day of January, 2008

_____
Notary Public

TINA M. ZOCCALI
Notary Public, State of New York
No. 01ZO6059025
Qualified in Rockland County
Commission Expires May 21, 20 11