UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

CASTLERIGG MASTER INVESTMENTS    :
LTD.,
   :
          Plaintiff,
   :
      -against-                       :     Civ. No. 07-cv-9742 (GEL)(DCF)

CHARYS HOLDING COMPANY, INC.,    :

          Defendant.    :

------------------------------------ X

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**McDermott Will & Emery LLP**
Andrew B. Kratenstein
Michael R. Huttenlocher
340 Madison Avenue
New York, New York 10173
(212) 547-5400

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ..................................................................................................... 3

I     CASTLERIGG WAS NOT REQUIRED TO PROVIDE CHARYS WITH
      ITS EVENT OF DEFAULT REDEMPTION NOTICE "PROMPTLY" .............. 3

II.   CASTLERIGG HAS CORRECTLY CALCULATED ITS DAMAGES ............ 4

III.  CHARYS IS NOT ENTITLED TO DISCOVERY. ............................................. 6

IV.   CASTLERIGG IS ENTITLED TO ATTORNEYS'S FEES AND COSTS.......... 8

CONCLUSION.................................................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................6

*Danton v. Harry Winston, Inc.*, 20 F.R.D. 425 (S.D.N.Y. 1957) .................................................6

*Gurary v. Winehouse*, 190 F.3d 37 (2d Cir. 1997) .......................................................................7

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) ...................................7

*K.M.L. Labs. Ltd. v. Hopper*, 830 F. Supp. 159 (E.D.N.Y. 1993) ...............................................3

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ...............................................................6

*Marine Midland Bank, N.A. v. The Brunswick Group, Inc.*, 83 Civ. 7070 (JFK),
    1985 WL 174 (S.D.N.Y. Jan. 8, 1985) ..................................................................................5

*Mason Tenders District Council Pension Fund v. Messera*, 958 F. Supp. 869
    (S.D.N.Y. 1997) .....................................................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1985) ..................................6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Amsted Indus. Inc.*, 05 Civ. 5886 (RO),
    2007 U.S. Dist. LEXIS 52757 (S.D.N.Y. July 17, 2007) ....................................................4

*Miller v. Wolpoff & Abrahamson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ......................................7

*Newbro v. Freed*, 409 F. Supp. 2d 386 (S.D.N.Y. 2006) ..............................................................4

*Newmark v. R K O Gen., Inc.*, 294 F. Supp. 358 (S.D.N.Y. 1968) ..............................................5

*Owens-Illinois Glass Co. v. Am. Coastal Lines, Inc.*, 222 F. Supp. 923
    (S.D.N.Y. 1963) .....................................................................................................................5

*Peabody v. Weider Publ'ns*, No. 07-0094-cv, 2008 U.S. App. LEXIS 889
    (2d Cir. Jan. 16, 2008) ...........................................................................................................7

## FEDERAL RULES

Fed. R. Civ. P. 56 ..........................................................................................................................7

Castlerigg[1] hereby submits, through its undersigned attorneys McDermott Will &
Emery LLP, the following Reply Memorandum of Law in Further Support of its Motion for
Summary Judgment. The Reply Declaration of Matthew Pliskin, dated February 1, 2008 ("Reply
Pliskin Decl.") is submitted herewith in further support of this motion.

## PRELIMINARY STATEMENT

Charys admitted in its Form 10-KSB filed with the Securities and Exchange Commission
that Charys defaulted on its obligations to Castlerigg under the Note. Charys's counsel then
admitted during the scheduling conference that Charys has no defense on the issue of liability.
And, unlike in the Answer that Charys filed – which disclaimed knowledge or information
sufficient to respond to almost every allegation in the Complaint – Charys now admits virtually
every material fact set forth by Castlerigg in its moving papers.

Yet, in a transparent attempt to prolong the judicial process and delay an inevitable
judgment in Castlerigg's favor, Charys makes three half-hearted and half-baked arguments in
opposition to Castlerigg's motion for summary judgment. All three arguments fail.

*First*, Charys asserts that Castlerigg is not entitled to summary judgment because
Castlerigg failed to send its Event of Default Redemption Notice "promptly after the occurrence"
of an Event of Default. The Note, however, does *not* require Castlerigg to send an Event of
Default Redemption Notice "promptly". Indeed, the only party required to send "prompt" notice
of anything is *Charys*. Regardless, it is undisputed that Charys received Castlerigg's Event of
Default Redemption Notice less than a month after Charys's default and that Charys was not
prejudiced by any purported delay. This argument is meritless.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in Castlerigg's Memorandum of
Law in Support of Plaintiff's Motion for Summary Judgment.

*Second*, Charys contends that summary judgment should be denied because Castlerigg did not accurately calculate its damages. Although Charys does not dispute that Castlerigg used the correct formula to calculate its damages, Charys contends that Castlerigg's calculation of damages is too high because the three Installment Payments that Charys made reduced only the principal amount owing. That is wrong.

Charys ignores that interest was accruing on the Note from the moment Charys issued it. The Installment Payment schedule specifically provided for the reduction of principal on the Note while paying down accrued interest. As a result, a significant portion of Charys's third Installment Payment paid down some of that accrued interest, which Castlerigg appropriately accounted for in its damages calculation. Castlerigg's damages calculation is correct.

*Third*, Charys makes a desperate plea for discovery but does not – because it cannot – explain why it needs discovery. Although Charys baldly asserts that it needs discovery regarding damages, that is clearly false. There is no dispute over the formula that should be used to calculate damages under the Note. The only potential "dispute" is over whether Castlerigg's application of that formula was correct. That is a *legal question* that can and should be decided by the Court now based on the unambiguous terms of the Note. Because Castlerigg's calculation is correct, it is entitled to summary judgment for the full amount (in dollars and warrants) that it seeks, plus attorneys' fees and costs.

## ARGUMENT

**I.    CASTLERIGG WAS NOT REQUIRED TO PROVIDE CHARYS WITH ITS EVENT OF DEFAULT REDEMPTION NOTICE "PROMPTLY".**

Charys first contends that summary judgment should not be granted because there is an issue of material fact regarding whether Castlerigg "promptly" delivered the Event of Default Redemption Notice. That argument is based on a misreading of the plain terms of the Note, which do *not* require Castlerigg to transmit an Event of Default Redemption Notice promptly after the occurrence of an Event of Default.

Specifically, Section 4(b) of the Note states, in pertinent part, as follows:

> Redemption Right. *Promptly* after the occurrence of an Event of Default with respect to this Note or any Other Note, the *Company [i.e., Charys]* shall deliver written notice thereof via facsimile and overnight courier (an **"Event of Default Notice"**) to [Castlerigg]. At any time after the earlier of [Castlerigg's] receipt of an Event of Default Notice and [Castlerigg] becoming aware of an Event of Default, [Castlerigg] may require [Charys] to redeem all or any portion of this Note by delivering written notice thereof (the **"Event of Default Redemption Notice"**) to [Charys], which Event of Default Redemption Notice shall indicate the portion of this Note [Castlerigg] is electing to redeem.

(Pliskin Decl. Ex. 2 § 4(b)) (italics supplied.)  As is clear from the plain, unambiguous language of the Note, the "promptness" requirement applies *only* to Charys's obligation to deliver an Event of Default Notice and *not* to Castlerigg's option to send Charys an Event of Default Redemption Notice to redeem the Note.  (*Id.*)  Accordingly, Charys's argument is baseless.

Even assuming that Castlerigg was required to send the Event of Default Redemption Notice "promptly" – which it was not – such notice was delivered promptly.  Under New York law, when "prompt" notice is required, a party is not required to provide that notice immediately, but instead must provide it within a "reasonable amount of time".  *See, e.g., K.M.L. Labs Ltd. v. Hopper*, 830 F. Supp. 159, 166 (E.D.N.Y. 1993).  Castlerigg sent Charys an Event of Default

Redemption Notice on September 28, 2007 – twenty-seven days after the occurrence of the Event of Default on September 1, 2007. Charys provides no explanation for why that amount of time was somehow "unreasonable".

Moreover, even if Castlerigg's notice was not "prompt", summary judgment should still be entered in favor of Castlerigg because Charys was not prejudiced by Castlerigg's purported delay. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Amsted Indus. Inc.*, 05 Civ. 5886 (RO), 2007 U.S. Dist. LEXIS 52757, at *6 (S.D.N.Y. July 17, 2007) (granting summary judgment to plaintiff and denying laches defense when defendant failed to demonstrate that delay resulted in prejudice); *Newbro v. Freed*, 409 F. Supp. 2d 386, 399 (S.D.N.Y. 2006) (same). Castlerigg delivered the redemption notice less than a month after the Event of Default. Charys does not even contend, let alone demonstrate, that it was prejudiced in any way as a result. Accordingly, this defense fails.

## II.    CASTLERIGG HAS CORRECTLY CALCULATED ITS DAMAGES.

In its opening brief and the accompanying Pliskin Declaration, Castlerigg described exactly how it calculated its damages. (Pl. Mem. at 8-9; Pliskin Decl. ¶¶ 8, 11, 12, 16, 19, 25, 26.) Charys does not contend that Castlerigg used the wrong formula in calculating damages. Instead, Charys contends that there is a disputed issue of fact because Castlerigg purportedly miscalculated the amount of outstanding principal due on the Note, which then caused the rest of Castlerigg's damages calculation to be incorrect. (Def. Mem. at 5.) It is Charys's calculation – not Castlerigg's – that is wrong.

Charys asserts that the outstanding principal is calculated by simply subtracting Installment Amounts as listed in Exhibit II of the Note from the face value of the Note.[2] (*Id.*) Charys, however, overlooks a critical fact: interest was accruing on the Note from the moment it was issued by Charys. (Pliskin Decl. Ex. 2 § 2.) The Installment Amounts listed in Exhibit II of the Note are an amortization schedule containing amounts that include *both* accrued interest and outstanding principal.

This is evident from the face of Exhibit II of the Note. The sum of the Installment Payments listed in Exhibit II is $5,266,017.44. This amount is higher than the face amount of the Note because the Installment Payments were designed to pay down both the principal and accrued interest.

Charys's error is further confirmed by a spreadsheet that was created by the parties during the transaction. (Reply Pliskin Decl. ¶ 2.) The May 15 and July 1 payments were each scheduled to be fully applied to the principal of the Note. By contrast, the August 1, 2007 payment was scheduled to pay down a combination of both principal ($406,268) and accrued interest ($102,220). (*Id.* ¶ 4.) Consequently, after the August 1, 2007 installment payment, the outstanding principal on the Note was $4,037,560. (*Id.* ¶ 5, Ex. 1.) Castlerigg's damages calculations was thus based on that outstanding principal amount. (*Id.* ¶ 6.)[3] Castlerigg's damages calculation is correct.

---

[2] It is undisputed that the face value of the Note is $5,012,426. (Def. 56.1 Stmt. ¶ 1.) It is also undisputed that Charys made the first three installment payments that were required by the Note in the amounts of $300,000 on May 15, 2007; $268,598.33 on July 1, 2007; and $508,487.04 on August 1, 2007. (Def. Mem. at 5.)

[3] Charys argues that, if this Court finds liability, "the damages issue should be determined by a factfinder pursuant to Fed. R. Civ. P. 56(d)." (Def. Mem. at 4.) Each of the cases cited by Charys for this proposition is inapposite for obvious reasons. *See Marine Midland Bank, N.A. v. The Brunswick Group, Inc.*, 83 Civ. 7070 (JFK), 1985 WL 174, at *5 (S.D.N.Y. Jan. 8, 1985) (party seeking summary judgment sought two different amounts from one party thereby confusing the issue of damages); *Newmark v. R K O Gen., Inc.*, 294 F. Supp. 358, 359 n.2 (S.D.N.Y. 1968) (no evidence of profits calculation was before the court); *Owens-Illinois Glass Co. v. Am. Coastal Lines, Inc.*, 222

(continued...)

## III.    CHARYS IS NOT ENTITLED TO DISCOVERY.

In its last gasp attempt to evade judgment, Charys asserts that Castlerigg's motion should be denied because there has been no discovery. That argument ignores the standard governing summary judgment motions that has existed for over twenty years.

It is well settled that once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the non-movant must provide specific facts to demonstrate a material factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" and "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1985) (internal citations omitted). Therefore, "a party [may not] rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Speculation and conjecture, however, is all that Charys presents. Charys contends that "continuing discovery will likely reveal additional relevant evidence" (Def. Mem. at 3, 6), but does not explain what that "additional relevant evidence" is or why it is "likely" to be "revealed" through discovery.

Although Charys claims that it "appears necessary to conduct depositions on the issue of damages" (Def. Mem. at 6), that is clearly not the case. Charys admits that at least $3,935,340.60 in principal was outstanding on the Note when Charys defaulted. (Def. Mem.

---

F. Supp. 923, 925 (S.D.N.Y. 1963) (moving party only sought partial summary judgment on liability); *Danton v. Harry Winston, Inc.*, 20 F.R.D. 425, 426 (S.D.N.Y. 1957) (moving party sought partial summary judgment on liability and an order of reference with respect to a damages). In contrast to these cases, Castlerigg is not only seeking summary judgment on both liability and damages, but also set forth exactly how it calculated its damages based on the undisputed facts and the unambiguous terms of the contract at issue.

- 6 -

at 5.)  Even if Castlerigg's damages calculation is wrong – which it is not – that error would not

create a material factual issue precluding summary judgment.  The damages calculation requires

nothing more than a legal interpretation of the Note and some math.  *See, e.g., Peabody v.*

*Weider Publ'ns*, No. 07-0094-cv, 2008 U.S. App. LEXIS 889, at * 4 (2d Cir. Jan. 16, 2008)

("[I]t is settled that the meaning of unambiguous contract terms is a questions of law for a court,

not a jury, to decide.")  In short, there is no reason for discovery or for further delay.

Charys also cites two cases for the general proposition that pre-discovery summary

judgment should rarely be granted.  (Def. Mem. at 6.)  Both cases, however, are easily

distinguishable.

In *Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000), the

plaintiff claimed that his employer made an adverse employment decision based on his

purportedly protected speech on a matter of public concern and was able to point to specific facts

solely in the hands of the defendant that were necessary to oppose the defendant's summary

judgment motion.  *Id.* at 97-98.  Similarly, in *Miller v. Wolpoff & Abrahamson, L.L.P.*, 321 F.3d

292 (2d Cir. 2003), the plaintiff was able to point to a specific set of facts justifying the need for

discovery and did not rely on a general request for discovery on a particular issue.  *Id.* at 303-04.

By contrast, Charys has not identified any specific information that it needs to oppose

Castlerigg's motion – because there is none.[4]

---

[4] Indeed, unlike the plaintiff in *Miller*, Charys does not even seek relief under Fed. R. Civ. P. 56(f).  In order to
obtain such relief, a party must file an affidavit which demonstrates "(1) what facts are sought [to resist the motion]
and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material
fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."
*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Mason Tenders Dist. Council Pension Fund v. Messera*,
958 F. Supp. 869, 894 (S.D.N.Y. 1997).  Here, Charys not filed such an affidavit.  And even if Charys had moved
under Rule 56(f), that motion would fail for the reasons discussed above.

## IV.    CASTLERIGG IS ENTITLED TO ATTORNEYS'S FEES AND COSTS.

As discussed in Castlerigg's opening memorandum, Charys's default entitles Castlerigg to attorneys's fees, disbursements and costs.  (Pl. Mem. at 11; Pliskin Decl. Ex. 1, ¶ 8(k).)  To date, Castlerigg has incurred $64,343.11 in attorneys's fees, costs and disbursements in prosecuting this action.  Attached as Exhibits 2-5 to the Reply Pliskin Declaration are redacted invoices[5] showing legal fees incurred by Castlerigg to date in prosecuting this action.

---

[5] These invoices have been redacted on the basis of the attorney-client privilege and work product doctrines. Unredacted copies will be made available for an in-camera review at the Court's request.

## CONCLUSION

For the foregoing reasons as well as those articulated in its moving papers, Castlerigg respectfully requests that this Court grant its motion for summary judgment on all its claims as expressed in the below chart and grant such further relief that the Court deems just and equitable under the circumstances.

| Contractual Remedy | Amount |
|---|---|
| Outstanding Principal | $4,037,560 |
| Accrued Interest, as of February 1, 2008 | $416,656 |
| Accrued Late Charges, as of February 1, 2008 | $253,587 |
| Total Event of Default Redemption Price including 120% Redemption Premium as of February 1, 2008 | $5,649,363 |
| Attorneys's Fees | $64,343.11 |
| Warrants Due and Owing | 7 total warrants for 2,956,359 shares of Charys Common Stock |

Dated: New York, New York.
      February 1, 2008

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

By: _____
    Andrew B. Kratenstein (AK-3910)
    Michael R. Huttenlocher (MH-1710)
    340 Madison Avenue
    New York, New York 10173-1922
    (212) 547-5400

*Attorneys for Plaintiff*
*Castlerigg Master Investments Ltd.*